# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| EMPRESS ESTATES LLC, a Washington Limited Liability Company, and ZOHIER SALEEM, | No.  50323-9-II |
| Appellants/Cross-Respondents, | UNPUBLISHED OPINION |
| v. | |
| TIMOTHY  DOYLE  and  TERRI  DOYLE, Husband and Wife and the marital community thereof, | |
| Respondents/Cross-Appellants. | |

SUTTON, J. — Empress Estate LLC and Zohier Saleem[1] appeal two final orders from a dispute with Timothy and Terri Doyle over a shared road easement.  Saleem argues that the superior court erred when it (1) did not require the Doyles to post an injunction bond, but required Saleem to post a bond as the party requesting a preliminary injunction and an amended preliminary injunction; (2) found Saleem in contempt for parking more than 30 vehicles on its property in violation of the preliminary injunction; (3) imposed punitive sanctions; and (4) issued a permanent injunction that permitted the Doyles to retain a wire fence within the road easement.

The Doyles cross appeal the amended final order on permanent injunction.  The Doyles argue that the superior court erred when it (1) ordered them to replace a cedar fence with a wire

---

[1] Empress Estate and Saleem were the plaintiffs below.  We refer to them collectively as Saleem unless otherwise indicated.

fence and remove gateposts within the easement without a finding that either could establish an adverse possession claim; (2) enjoined them from placing a fence in the future within the unused portion of the easement area; (3) allowed a total of 68 vehicles to park on the Empress property; and (4) ordered them to remove a speed bump within the easement without a finding that the speed bump unreasonably interfered with Saleem's use of the easement.

We hold that the superior court did not abuse its discretion by requiring Saleem, as the party asking for both a preliminary injunction and an amended preliminary injunction, to post a bond while not requiring the Doyles to post a bond. We also hold that the superior court erred by imposing a $500 civil fine and a $1,500 damage award against Saleem for contempt violations because they were punitive sanctions and we vacate both sanctions. We further hold that the superior court did not abuse its discretion by holding Saleem in contempt for violating the 2015 amended order for preliminary injunction by allowing more than 30 vehicles to park on his property. As to the Doyles' cross appeal, we hold that all of their arguments fail. Thus, we affirm in part, reverse in part, and vacate the sanctions.

FACTS

I. BACKGROUND

This appeal arises from a dispute between neighbors over the use of a shared road easement. Empress Estates is accessed by a 60-foot easement called Empress Lane, a private paved road crossing the Doyles' property. Empress Lane is a recorded road easement and is the sole means of ingress and egress to the Empress property. Saleem purchased Empress Estates in 2012, and it had been used as a bed and breakfast inn. The Doyles own rural property near the Empress property.

The Cowlitz County Building and Planning Department receive complaints about Saleem operating an event center and had concerns regarding Saleem's use of the property. The county had approved Empress Estates to operate as a five-room bed and breakfast inn, not as an event center. After multiple alleged zoning violations, a hearing took place on June 23, 2017. The hearing officer found that the existing building on the Empress property was not sanctioned as an event center because Saleem had not retrofitted the sprinkler system within the existing building. Despite the limited approval, the hearing officer found that Saleem, as the owner of Empress Estates, had continued to hold large events on the Empress property. Due to the lack of adequate parking for the events, many guests parked their cars along the private road easement, Empress Lane.

The events held at Empress Estates disrupted the Doyles' rural lifestyle due to loud music, headlights, cars parked adjacent to their property, and occasional intruders who tried to touch their horses. The Doyles photographed the patrons and took other actions to deter the Empress visitors. The Doyles allegedly erected a gate with a keypad and motion sensor across Empress Lane and the gate had, on many occasions, restricted Saleem's use of Empress Lane either because the Doyles allegedly locked the gate, or because the motion sensor failed to work. The Doyles also allegedly installed several speed bumps along Empress Lane to slow traffic associated with events on the Empress property.

In 2014, the Doyles allegedly destroyed signposts put up by Empress Estates directing visitors to the event center, hung several "No Trespassing" signs near the beginning of Empress Lane, and engaged in other harassing conduct. This alleged conduct included the following: hanging dead animal carcasses and severed animal heads within the easement area; feeding

3

animals in the middle of the easement to impede traffic; causing an ice hazard by overflowing a sump pump across Empress Lane; obstructing the road easement with piles of horse manure, snow, traffic cones, garbage cans, trucks, and heavy machinery; and using social media to discourage potential clients from visiting Empress Estates.

## II. 2013 ORDER GRANTING PRELIMINARY INJUNCTION

In 2013, Saleem sued the Doyles and requested injunctive relief to (1) remove the gate the Doyles installed, (2) cease harassing his visitors, and (3) cease interfering with his use of the easement. On June 19, 2013, the superior court granted a preliminary injunction in favor of Saleem and ordered (1) the Doyles to keep the gate they had installed across Empress Lane open; (2) Saleem to take "reasonable steps to insure that [his] invitees did not disturb the [Doyles];" (3) both parties to stop harassing one another; and (4) payment of a $5,000 bond. Clerk Paper's (CP) at 72-73. Specifically, the court's order stated, "Bond is set [at] $5,000," without specifying which party was required to pay the bond. CP at 73. Subsequent orders clarified that Saleem was the party required to pay the $5,000 bond.

In 2015, Saleem and Empress Estates sued the Doyles, alleging interference with the easement, tortious interference with business expectancy, damage to property, nuisance, outrage, and intentional infliction of emotional distress. The superior court consolidated the 2013 and 2015 cases.

## III. CONTEMPT MOTIONS AND 2015 AMENDED ORDER ON PRELIMINARY INJUNCTION

In April 2015, the parties filed cross-motions for contempt, alleging violations of the 2013 order granting preliminary injunction. A commissioner of the superior court heard the motions and found both parties in contempt of the order, imposed additional restrictions on both parties,

4

and amended the order. On April 22, 2015, the superior court entered an amended order on preliminary injunction.

In the 2015 contempt proceeding, Saleem filed a declaration stating that the county had not limited the number of vehicles allowed on the Empress property, and stating that there were parking spaces for more than 85 vehicles which were not within sight of the Doyles' property. Based on this declaration, the superior court increased the number of vehicles that were permitted to park on the Empress property for events from 10 to 30 in its amended order on preliminary injunction.

The 2015 amended order on preliminary injunction enjoined the plaintiff, Saleem, as follows:

> a. No more than 30 motor vehicles may be on [Saleem's] property at the same time;
> b. [Saleem] and his invitees are not to park on the access easement, and [Saleem] must enforce this prohibition with respect to his invitees;
> c. The motion-activated light which [Saleem] has installed is to be deactivated, moved so that it faces away from [the Doyles'] property, or shielded; and
> d. [Saleem] and his representatives and invitees are not to photograph or videotape anything on the access easement or on defendant's property, other than in the presence or with the consent of counsel for both parties.

CP at 868.

> The 2015 amended order also enjoined the Doyles as follows:

> a. [The Doyles are] not to linger within 50 feet away from the gate located on the access easement, other than when [they are] simply passing through the area;
> b. [The Doyles] and [their] representatives are not to photograph or videotape anything on the access easement or on [Saleem's] property, other than in the presence or with the consent of counsel for both parties; provided, however, [the Doyles] may continue to utilize his surveillance camera to view his own property and the access easement;
> c. [The Doyles] shall not park machinery or equipment in the roadway that is the access easement;

5

d.  [The Doyles] shall not damage or destroy any signage relating to [Saleem's] business.

CP at 868.

The 2015 amended order stated that all aspects of the original order on preliminary injunction remained in full force and effect, and the amended order supplemented the original preliminary injunction.

IV.  EMBRATORA PROPERTY AND NEW MULTI-PURPOSE BUILDING

In November 2015, Saleem purchased an adjacent property called Embratora, and installed 25 additional parking spaces on that property for the event center.  In early 2016, Saleem filed plans with the county to build a new multi-purpose building on the Empress property, incorporate the extra parking spaces on the Embratora property, and add 13 additional parking spaces next to the new building.  The county issued the permits and construction began.

The properties owned by Saleem and the Doyles are in a designated RR-2 area,[2] but are not otherwise zoned.  Julius Ledgett created the easement known as Empress Lane for "ingress and egress."  CP at 583.  He stated in his declaration, "We did not intend to place any restrictions on the use of these easements and anticipated that the properties would be used for any purpose permitted by the land use and building code rules and regulations."  CP at 157.

---

[2] Under Cowlitz County code 18.10.160, properties designated as RR-2 are "rural residential," but may be used for limited commercial purposes as long as the usage is compatible with the residential character of the land use district.  The commercial use is "subject to special use permit approval pursuant to CCC 18.10.280 through 18.10.490."  CCC 18.10.160 (located at: https://www.codepublishing.com/WA/CowlitzCounty/html/CowlitzCounty18/CowlitzCounty1810.html#18.10.160).

## V. 2017 CONTEMPT MOTION AND MOTION TO RECONSIDER

In early 2017, the Doyles filed another motion for contempt, alleging that Saleem violated the 2015 amended order on preliminary injunction by parking more than 30 vehicles on the Empress property. Saleem objected to this motion, alleging that the motion was an attempt to harass him.

The superior court held a hearing and ruled that Saleem had violated the injunction and required that the $5000 bond be forfeited as a sanction. Saleem filed a motion to reconsider and requested a stay of the sanction pending appeal.

On March 22, 2017, the superior court entered an order denying in part and granting in part the motion to reconsider and denying a stay of proceedings, ruling:

1. There is a sufficient basis under CR 59 for the Court to reconsider its January 18, 2017, oral ruling;

2. The April 22, 2015, Amended Order for Preliminary Injunction is valid. The Amended Order made specific reference to the June 19, 2013 Order and stated that all aspects of it "remain[] in full force and effect" and that the Amended Order "supplement[ed]" the original Order. Because the original Order required a bond and this bond requirement remained and was part of the Amended Order, the Amended Order is valid and enforceable.

3. The Court's oral ruling requiring the forfeiture of the $5,000 bond in favor of [Saleem] is hereby vacated. The Court erred in so ruling. The purpose of the injunction bond is to reimburse a wrongfully enjoined party from damages if the Court determines that the injunction was wrongfully issued. That is not the case here. Rather, the Court found [Saleem] had contemptuously violated the injunctive order.

4. The Court denies the reconsideration of the finding of civil contempt. The facts presented were discrete and readily ascertainable. The Court's intention in imposing a civil fine for [Saleem's] civil contempt was and is to coerce [Saleem's] future obedience to the amended preliminary injunction, and to a lesser extent punish [Saleem] for his violation. It is the Court's opinion that if a coercive fine is not imposed, [Saleem] will be emboldened to again violate the preliminary injunction. The contempt fine is aimed at coercing [Saleem] to comply now and in the future with the Court's order.

5. Further, with the instant order, [Saleem] is given an opportunity to purge the vast majority of the civil contempt fine. Therefore, it is hereby ordered that upon no further violations of the preliminary injunction, [Saleem] can purge $4,500 of the $5,000 contempt fine. For now, [Saleem] may pay a civil fine of $500. He, then, has the opportunity to purge $4,500 of the civil fine upon obedience to the Court's Order. By this mechanism, [Saleem] holds the key to lessen the sanction and is thus motived to comply with the amended preliminary injunction.

6. [Saleem's] motion to stay proceedings is denied.

CP at 74-75 (some alterations in original).

## VI.  ADDITIONAL MOTIONS AND THE SUPERIOR COURT'S JULY 17, 2017 ORDER

### A.  THE DOYLES' MOTIONS FOR CONTEMPT

After the March 22 order, the Doyles filed additional contempt motions, alleging that Saleem violated the injunction on April 10, April 24, and June 9, 2017, and filed a motion to dismiss. Saleem argued that the 30 vehicle restriction was not enforceable as an injunction because the Doyles were not required to post a bond and the "April 22, 2015 [o]rder is a condition, or [o]rder, but cannot be an injunction." CP at 584-85.

The court reviewed the declarations of Timothy Doyle and Roger Faraar which stated that there were more than 30 cars parking on Empress Estates on April 10, April 24, and June 9. The superior court found that Saleem's April 8, 2015 declaration confirmed that there was "parking spaces for more than eighty-five (85) vehicles, entirely on [the] property" and that this declaration had been filed prior to his purchasing the adjoining property, the Embratora property. CP at 584.

The superior court also reviewed the declaration of Lisa Slater, who designed the additional parking on the Embratora property. Slater stated, "With regard to parking, the intent of the approved plans is to add an additional 38 parking spaces to those already existing on the Empress

property. Indeed, the county has required as a condition of approval, that we provide at least 38 on-site parking spaces." CP at 584.

The superior court rejected Saleem's argument that the injunction was not enforceable stating that court orders must be obeyed. The court also found "no support for the position that the parking spaces on the Empress property is limited to 30." CP at 584.

The superior court ruled that "[t]he Embratora parking spaces cannot be 'on-site' for the county, but 'off-site' for the contempt motion." CP at 584. Based on the declaration of Lisa Slater, the court did not accept the argument that the Embratora parking spaces were not on the Empress property because it determined that Empress Estates' activity caused vehicles to park on the Embratora property.

The superior court ruled that Saleem had violated the 30 vehicle restriction by continuing to hold large events on the Empress property and found Saleem in contempt of the court's 2015 amended preliminary injunction order. The court's ruling referred to its March 2017 order that gave Saleem the opportunity to purge $4,500 of the $5000 contempt fine by limiting the number of vehicles parked on its property. The superior court stated, "That did not occur, further warranting a finding of contempt. I find that Doyle is damaged from the three violations in the combined amount of $1,500.00. This amount is to be paid directly to Mr. Doyle." CP at 585.

B. VEHICLE LIMITATION AND SCOPE OF EASEMENT

Saleem also filed a motion to amend and make permanent the preliminary injunction without any vehicle limitation. In response, the Doyles requested that the 30 vehicle limitation remain. The superior court found that the Empress property had 30 parking spaces and the Embratora property had 25 spaces, for a total of 55 available spaces, allowing for 55 vehicles. The

court also found that 13 additional spaces were planned next to the event center, and when constructed, there would be a total of 68 spaces, allowing for 68 vehicles to park. The superior court based its decision on (1) the controls on the property, (2) the language of the easement and intent of the grantor which included the broadest possible language of "ingress and egress," and (3) the fact that the Empress property and Doyle property are virtually unzoned, and any activity that is not unlawful or a nuisance is allowed, including commercial activity.

The superior court ultimately ruled that Saleem must provide adequate parking for his guests because he had the legal authority to operate an event center that was accessed by a private road easement. The superior court ordered that the number of vehicles allowed must not exceed the number of parking spaces actually constructed and approved by the county's building and planning department. The superior court also ruled that ". . . there is no basis to place any vehicle restriction on the easement." CP at 586. The court further ruled that the permanent injunction would require Saleem to ensure that there is no parking along the road easement and that any vehicle parking on the easement within "500 feet of the north Empress'[s] property line will raise a rebuttable presumption that the permanent injunction has been violated. Any Empress invitee parking on any part of Empress Lane will constitute a violation of the permanent injunction." CP at 587.

C. SALEEM'S EASEMENT RIGHTS ON THE DOYLES' PROPERTY

Saleem also requested a permanent injunction against the Doyles that would allow him to use the easement without interference by the Doyles and would require the Doyles to remove their wire fence, gateposts, and farm equipment outside of the 60-foot easement, citing *Littlefair v. Schultz,* 169 Wn. App. 659, 278 P.3d 218 (2012). In support of the motion, Saleem filed a

declaration stating, "The paved portion [of Empress Lane] is approximately twenty-one (21) to twenty-three (23) feet wide, more than adequate for the widest of cars and trucks to pass each other along the road." CP at 588.

The superior court ruled that the "[Doyles'] use of the unused portion of the 60-foot easement does not interfere with Saleem's, or the Empress guests' enjoyment of the easement." CP at 588-89. The superior court also found that "Doyle's wire fence along the roadway is not the kind of permanent structure that was prohibited in Littlefair." CP at 589. As a result, the superior court denied Saleem's request for a permanent injunction against the Doyles, with two caveats: "First, should the road be widened in the future, Doyle will need to move his fence and equipment to accommodate the new width of the road. Second, should Doyle choose to erect a more substantial fence, it will need to be erected outside of the 60-foot easement." CP at 589.

D.  ADDITIONAL ISSUES

The superior court also addressed several additional issues raised by the parties. The court ordered that the Doyles' gate shall remain open; declined to enter an order regarding firearms, noting that the property is in a virtually unzoned area, and the use of firearms is lawful; ordered that two permanent speed bumps, one at each end of the Doyles' property would be allowed; determined that the Doyles are allowed to post "No Parking" signs within the easement area, adjacent to their property; and determined there was no evidence of disparaging social media activity.

E.  COURT'S JULY 17, 2017 ORDERS ON CONTEMPT AND AMENDING AND MAKING PERMANENT THE INJUNCTION

On July 17, 2017, the superior court entered an order on the motions for contempt based on its finding Saleem in contempt for violations of its April 22, 2015 amended order on preliminary injunction.  The superior court found that "[a]s a result of the excessive number of vehicles parking on the Empress and Embratora[3] properties, the [Doyles have] been damaged in the amount of $1,500.00."  CP at 231.

The superior court also entered an order modifying the amended preliminary injunction to limit the number of vehicles to equal the number of constructed and approved parking spaces, and denied Saleem's motion to require the Doyles to move their fence, gateposts, and farm equipment outside of the 60-foot easement.  The court's order granted Saleem's motion to amend and to make the preliminary injunction permanent.

The July 17 order on permanent injunction includes the following relevant conclusions of law:

1.  The Easement grants [Saleem] the right to use the Easement for commercial purposes.  This includes the right to access a multi-use commercial facility such as a bed-and-breakfast, event center, or other multi-use facility, if approved by Cowlitz County.

2.  [Saleem] will be allowed to fully use the Easement, consistent with Cowlitz County's land-use rules and regulations.

3.  The Easement precludes [the Doyles] from interfering with [Saleem's] lawful use of the Easement, which includes the use of the road to allow visitors and guest[s] to locate and access the Empress without harassment or interference.

---

[3] Saleem, on behalf of Empress Estates, had previously represented to Cowlitz County officials that parking on the Embratora property was "on-site" for the purpose of additional parking required for the new multipurpose building.  CP at 231.  The court found that, because of that representation, the vehicles parked there were to be included in the 30-car limitation.

However, [Saleem] must take reasonable steps to notify [his] guests to not park or trespass on [the Doyles'] property.

4. The Easement also precludes [the Doyles] from placing any permanent structures or improvements within the 60-foot Easement area; however, this restriction does not include Doyle's existing wire fence, maintaining animals or the storage of farm equipment and trailers off the road surface and behind the existing wire fence, except:

> a. [The Doyles] are directed to remove the cedar fence on the east side of the road surface within 60 days.
>
> b. [The Doyles] shall be allowed to place a wire fence in the area of the cedar fence so long as it is 6 feet off the road surface and [the Doyles] are allowed to store their equipment to the east of the newly installed wire fence.
>
> c. [The Doyles are] directed to move the fence corner with the "Shooting Range" sign outside of the 60 foot easement.
>
> d. [The Doyles] shall use reasonable efforts to keep domestic and farm animals off the road surface, except when transporting animals across the road.

5. [Saleem has] also demonstrated a clear legal or equitable right to the Easement.

6. [Saleem has] also shown that, without judicial intervention, [the Doyles] will continue to violate those rights and that irreparable harm and injury has and will continue to result, absent an injunction.

7. The court has also balanced the harms and considered the public interest and believes that issuing a permanent injunction is appropriate.

CP at 235-36.

## VII. ADDITIONAL MOTIONS AND FINAL ORDERS FOR AMENDED JUDGMENT OF CONTEMPT AND AMENDED FINAL ORDER ON PERMANENT INJUNCTION

Following the entry of the July 17 orders, the Doyles filed another motion for contempt. On October 2, 2017, the superior court granted the Doyles' motion for contempt and issued the 2017 amended final judgment of contempt against Empress and Saleem along with the 2017 amended final order on permanent injunction.

In the amended judgment of contempt, the superior court finalized the order from July 17 and found that

the court's Order on the Motion for Contempt is distinct from the other claims and issues in this matter. The court also finds that this Order of Contempt resolves a key issue between the parties and that an appeal of the court's order will not interfere with the remaining issues.

CP at 691. The 2017 amended final order on permanent injunction expands the limitations in the April 22, 2015 amended preliminary injunction.

Saleem appeals the 2017 amended final judgment of contempt and the 2017 amended final order on permanent injunction. The Doyles cross appeal the 2017 amended final order on permanent injunction.

ANALYSIS

I. PRELIMINARY INJUNCTION BOND AND AMENDED PRELIMINARY INJUNCTION-BOND

Saleem argues that the superior court erred by not requiring the Doyles to post a bond in the 2013 preliminary injunction or the 2015 amended preliminary injunction because "the Doyles' responsive papers indicate they also requested that the [superior] court restrain Empress and its clients from disturbing the Doyles." Br. of Appellant at 13. The Doyles argue that they did not request injunctive relief in either the original motion for injunction or Saleem's motions to reconsider and amend and make permanent the preliminary injunction, and thus, they were not required to post a bond, and the superior court did not err. Because Saleem was the party or applicant asking for the preliminary injunction and amended injunction, not the Doyles, we hold that the superior court did not err by requiring Saleem, not the Doyles, to post a bond.

A. LEGAL PRINCIPLES

RCW 7.40.080 states, in relevant part:

No injunction or restraining order shall be granted until *the party asking it shall enter into a bond*, in such a sum as shall be fixed by the court or judge granting

the order, with surety to the satisfaction of the clerk of the superior court, to the adverse party affected thereby, conditioned to pay all damages and costs which may accrue by reason of the injunction or restraining order.

(Emphasis added.)

CR 65(c) provides, in relevant part:

Except as otherwise provided by statute, no restraining order or preliminary injunction shall issue except upon the giving of security *by the applicant*, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

(Emphasis added.)

We review interpretation of a statute de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). When engaging in statutory interpretation, we endeavor to determine and give effect to the legislature's intent. *Jametsky*, 179 Wn.2d at 762. In determining the legislature's intent, we must first examine the statute's plain language and ordinary meaning. *Jametsky*, 179 Wn.2d at 762. Legislative definitions included in the statute are controlling, but in the absence of a statutory definition, we give the term its plain and ordinary meaning as defined in the dictionary. *American Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004). In addition, we consider the specific text of the relevant provision, the context of the entire statute, related provisions, and the statutory scheme as a whole when analyzing a statute's plain language. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). If the statute is unambiguous, we apply the statute's plain meaning as an expression of legislative intent without considering other sources. *Jametsky*, 179 Wn.2d at 762.

We review the interpretation of a court rule de novo and in the same manner as we review statutes. *North Coast Elec. Co. v. Signal Elec., Inc.*, 193 Wn. App. 566, 571, 373 P.3d 296 (2016).

We give effect to the plain meaning of a rule as an expression of the drafter's intent. *Guardado v. Guardado*, 200 Wn. App. 237, 243, 402 P.3d 357 (2017).

B. SALEEM WAS THE PARTY ASKING FOR INJUNCTIVE RELIEF

RCW 7.40.080 states in relevant part that "[n]o injunction or restraining order shall be granted until *the party asking it shall enter into a bond . . . .*" (Emphasis added.) The term "the party" is unambiguous and is not subject to more than one reasonable interpretation. *Jametsky*, 179 Wn.2d at 762. Thus, we apply its plain meaning. *Jametsky*, 179 Wn.2d at 762.

CR 65(c) states in relevant part that "no restraining order or preliminary injunction shall issue except upon the giving of security *by the applicant . . . .*" (Emphasis added.) The term "the applicant" is unambiguous and is not subject to more than one reasonable interpretation. *Jametsky,* 179 Wn.2d at 762. Thus we apply its plain meaning. *Jametsky,* 179 Wn.2d at 762.

Here, Saleem requested a preliminary injunction in his initial complaint for injunctive relief and damages and filed a motion for a preliminary injunction. The superior court granted the motion and entered an order for preliminary injunction, citing Saleem's motion and imposed a $5,000 injunction bond.[4] Under the language of RCW 7.40.080, Saleem was "the party asking" that an injunction be granted. Under the language of CR 65(c), Saleem was "the applicant" requesting the injunction. Thus, the superior court properly required Saleem, not the Doyles, to post the injunction bond under RCW 7.40.080 and CR 65(c), and did not err. We hold that the

---

[4] The order did not specifically state which party was required to post the bond; however, subsequent orders clarified that Saleem was required to pay the bond. On appeal, neither party disputes that Saleem was required to pay the bond.

superior court did not abuse its discretion by requiring Saleem, not the Doyles, to post a bond when Saleem was the party who moved for the preliminary injunction.

## II. DIRECT APPEAL

"'Whether contempt is warranted in a particular case is a matter within the sound discretion of the trial court; unless that discretion is abused, it should not be disturbed on appeal.'" *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995) (quoting *In re Pers. Restraint of King*, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988)). A trial court abuses its discretion if its contempt decision was manifestly unreasonable or based on untenable grounds. *Holiday v. City of Moses Lake*, 157 Wn. App. 347, 355, 236 P.3d 981 (2010). In addition, a contempt ruling based on an erroneous view of the law or an incorrect legal analysis constitutes an abuse of discretion. *In re Estates of Smaldino*, 151 Wn. App. 356, 364, 212 P.3d 579 (2009).

The contempt statutes distinguish between remedial or civil sanctions and punitive or criminal sanctions for contempt of court. *In re Interest of Silva*, 166 Wn.2d 133, 141, 206 P.3d 1240 (2009). A "remedial sanction" is "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3). A "punitive sanction" is imposed to punish past contempt of court to uphold the court's authority. RCW 7.21.010(2). To determine whether sanctions are remedial or punitive, the "courts look not to the 'stated purposes of a contempt sanction,' but to whether it has a coercive effect—whether 'the contemnor is able to purge the contempt and obtain his release by committing an affirmative act.'" *In re Dependency of A.K.,* 162 Wn.2d 632, 646, 174 P.3d 11 (2007) (quoting *Int'l Union, United Mine Works of Am. v. Bagwell*, 512 U.S. 821,

828, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994).  A remedial sanction is valid only if it is remedial as opposed to punitive.  *See Silva*, 166 Wn.2d at 141-42.

Notice and a hearing are required when a remedial sanction is sought.  RCW 7.21.030.  The prosecutor must initiate an action for a punitive sanction by filing an information or a complaint, and when filed, the party has a right to a trial and the right to due process must be afforded.  RCW 7.21.040(2)(a) and (3).  When applicable, the superior court's finding of contempt must be supported by substantial evidence.  *In re Rapid Settlements, Ltd.,* 189 Wn. App. 584, 601, 359 P.3d 823 (2015).  Substantial evidence is evidence that is sufficient to persuade a rational, fair-minded person of the truth of the finding.  *Blackburn v. Dep't of Soc. & Health Servs.,* 186 Wn.2d 250, 256, 375 P.3d 1076 (2016).

A.  SALEEM'S CONTEMPT – NUMBER OF PARKED VEHICLES

Saleem argues that there was insufficient evidence that he exceeded the 30 vehicle limitation, and thus, the superior court erred in finding him in contempt of the April 22, 2015 order on preliminary injunction.  He argues that at the time the court granted the injunction, Julius Ledgett owned the adjoining parcel and he later acquired the Embratora property.  Thus, Saleem argues that most of the complained of vehicles were parked on the Embratora property not on the Empress property, and he cannot be found to have violated the order for cars parked on the adjoining property owned by a separate entity.  Because substantial evidence supports the superior court's finding of contempt, we hold that the superior court did not err and did not abuse its discretion.

The 2015 amended order on preliminary injunction states, "No more than 30 motor vehicles may be on plaintiff's property at the same time."  CP at 868.  The superior court's July 3,

2017 order found Saleem in contempt of the 2015 amended order for preliminary injunction. The court based its decision in part on the declarations filed by Timothy Doyle and Roger Farrar which demonstrated that "the evidence supports that more than 30 cars were parked at the Empress property on April 10, 2017, April 24, 2017, and June 9, 2017." CP at 584.

The superior court also based its decision on the declaration of Lisa Slater, who designed the additional parking on the Embratora property. Her declaration stated, "With regard to parking, the intent of the approved plans is to add an additional 38 parking spaces to those already existing on the Empress property. Indeed, the county has required as a condition of approval, that we provide at least 38 <u>on-site</u> parking spaces." CP at 584. The superior court's order stated that "[t]he Embratora parking spaces cannot be 'on-site' for the county, but 'off-site' for the contempt motion." CP at 584. The court's order further stated, "Based on the Slater [d]eclaration, I do not accept that the Embratora parking spaces are not on the Empress Estates' property. Further, it is Empress Estates' activity that brings cars to the property." CP at 584.

Based on these declarations, substantial evidence supports the superior court's finding that Saleem violated the 30 vehicle restriction. That finding supports the superior court's conclusion of law that Saleem was in contempt of the amended preliminary injunction. Thus, we hold that the superior court did not abuse its discretion.

B. SANCTIONS – CIVIL FINE AND DAMAGES AWARD AGAINST SALEEM

Saleem argues that the imposed $500 civil fine and $1,500 damage award violate RCW 7.21.040, and should be vacated. We agree.

Here, when imposing the $500 civil fine against Saleem, the superior court stated that its "intention in imposing a civil fine for [Saleem's] civil contempt was and is to coerce [Saleem's]

future obedience to the amended preliminary injunction, and to a lesser extent, *punish [Saleem] for his violation.*" CP at 75 (emphasis added). Because punitive sanctions are imposed to punish past contempt and the court explicitly stated that the $500 civil fine was imposed to punish Saleem for his past violations of the 2015 amended preliminary injunction, the civil fine is a punitive sanction.

Under RCW 7.21.040(2)(a), an action to impose punitive sanctions must be initiated by a prosecutor. A prosecutor did not initiate an action here. And the party subject to an action for punitive sanctions must be afforded statutory due process protections. Saleem was not afforded such protections. Thus, because the $500 civil fine is punitive, we hold that the superior court abused its discretion by imposing the civil fine.

In its order awarding $1,500 in damages to the Doyles, the superior court found Saleem in contempt and found that "[the Doyles are] damaged from the three violations in the combined amount of $1,500.00." CP at 585. But the superior court's contempt order awarding damages did not include a purge condition.

Under *Rapid Settlements*, a remedial sanction must contain a purge clause or it loses its coercive character and becomes a punitive sanction. *In re Rapid Settlements, Ltd.,* 189 Wn. App. at 613. Because the superior court's order did not include a purge condition, the damages award was a punitive sanction. As discussed, a punitive sanction may only be initiated by the prosecutor and the prosecutor did not initiate an action here. The superior court therefore abused its discretion by awarding damages as a punitive sanction. Thus, we hold that the civil fine and damages award were punitive sanctions. We reverse and vacate both sanctions.

C.  PERMANENT INJUNCTION

Saleem argues that under *Littlefair v. Schulze*,[5] the superior court erred when it issued the 2017 amended final order on permanent injunction that allowed the Doyles to retain a wire fence within the easement.  Saleem claims that the Doyles maintained substantial improvements within the easement area, including fencing, cars, trailers, and equipment.  Saleem claims that while the 2017 amended final order on permanent injunction required the Doyles to remove most encroachments, the court also found that because the road is only 12-14 feet wide, the Doyles could maintain their current wire fence within the remaining 46 to 48 foot easement area.  Saleem claims that this ruling directly conflicts with this court's holding in *Littlefair*.  We disagree.

In *Littlefair*, we held that removal of a fence was necessary to avert termination of the easement through adverse possession.  *Littlefair*, 169 Wn. App. at 671.  The easement at issue was a 40-foot wide easement road and the servient landowner erected a fence that ran parallel to the road.  *Littlefair,* 169 Wn. App. at 662.  The court reasoned that the easement in that case was "regularly used for ingress, egress, and utilities, and [the servient landowner's] fence appears to be a permanent structure that could establish an adverse possession claim by [the servient landowner]."  *Littlefair,* 169 Wn. App. at 667.  The court determined that the dominant landowner was "entitled to have it removed to prevent loss of a major portion of the 40-foot easement."  *Littlefair,* 169 Wn. App. at 667.

Construction of a fence in an easement area is not, in and of itself, a sufficiently inconsistent use to constitute adverse possession.  *City of Edmonds v. Williams*, 54 Wn. App. 632, 636-37, 774

---

[5] 169 Wn. App. 659, 278 P.3d 218 (2012).

P.2d 1241 (1989). An adverse possession claim would only arise in this situation where a servient owner creates an obstruction that clearly interferes with proper enjoyment of the easement. *Cole v. Laverty*, 112 Wn. App. 180, 184, 49 P.3d 924 (2002).

Saleem claims that *Littlefair* prohibits the Doyles from placing a permanent or semi-permanent structure or improvement within the easement. But *Littlefair* simply prohibits *permanent* structures that may lead to the servient landowner's establishment of an adverse possession claim on the easement. *Littlefair,* 169 Wn. App. at 667 (emphasis added). Here, the superior court's amended final order on permanent injunction identified the location and existence of the wire and cedar fences at issue. The superior court's order stated that the Doyles are precluded from "placing any permanent structures or improvements within the 60-foot easement area; however this restriction does not include [their] existing wire fence." CP at 280. This language mirrors that in *Littlefair*. The superior court's order also directed the Doyles to remove the cedar fence and replace it with a wire fence that was to be 6 feet from the road surface of the easement. This language also mirrors that in *Littlefair* because it ensures that all easement users have proper access to the purpose of the easement, i.e., ingress and egress.

The wire fence does not inhibit Saleem's right to use the road easement, nor does it establish an adverse possession claim by the Doyles. Thus, we hold that the superior court did not err in entering the amended final order on permanent injunction.

## III. CROSS APPEAL

### A. REMOVAL OF THE CEDAR FENCE AND GATE POSTS

The Doyles argue that the superior court's conclusion of law that the cedar fence and gate posts should be removed and the cedar fence should be replaced with a wire fence within the

unused easement area, is not supported by the court's findings of fact because the findings do not provide any basis for requiring their removal. We hold that the superior court's findings of fact support its conclusion of law that the cedar fence and gate posts must be removed because they are permanent structures within the easement area that interfere with Saleem's lawful use of the easement.

We review a court's conclusions of law de novo to determine whether they are supported by the findings of fact. *State Farm Fire & Cas. Co. v. Justus,* 199 Wn. App. 435, 448, 398 P.3d 1258, *review denied*, 189 wn.2d 1026 (2017). As discussed above, *Littlefair* prohibits permanent structures that may lead to the servient landowner's establishment of an adverse possession claim on the easement. *Littlefair,* 169 Wn. App. at 667.

Here, the superior court found that the easement grants Saleem the right to use the easement for commercial purposes, subject to approval by Cowlitz County, and precludes the Doyles from interfering with Saleem's lawful of the easement. Based on this finding, the court concluded the following:

> 4. The Easement also precludes [the Doyles] from placing any permanent structures or improvements within the 60-foot Easement area; however, this restriction does not include Doyle's existing wire fence, maintaining animals or the storage of farm equipment and trailers off the road surface and behind the existing wire fence, except:
>> a. [The Doyles] are directed to move the cedar fence on the east side of the road surface within 60 days.
>> b. [The Doyles] shall be allowed to place a wire fence in the area of the cedar fence so long as it is 6 feet off the road surface, and [the Doyles] are allowed to store their equipment to the east of the newly installed wire fence.
> . . . .

CP at 280.

Based on the record, the superior court found that replacing the Doyles' cedar fence with a wire fence along the roadway would not be the kind of permanent structures that are prohibited in *Littlefair* because the wire fences could easily be removed if the road needs to be widen in the future. In the amended final order on permanent injunction, the superior court incorporated its findings from the July 3, 2017 order. The court explained that "[s]uch fences are routinely placed along the road to keep animals and children in, keep easement users out, and otherwise create a barrier, but not a boundary, between the easement and private property. These fences are easily removed should the need to widen the road arise in the future." CP at 589. The court stated that "should Doyle choose to erect a more substantial fence [than the wire fence along the roadway], it will need to be erected outside of the 60-foot easement." CP at 589. These findings of fact support the superior court's conclusion of law that the cedar fence and gateposts should be removed from the easement and the cedar fence should be replaced with a wire fence. Thus, we hold that the Doyles' claim fails.

B.  FENCES IN THE UNUSED EASEMENT

The Doyles argue that the superior court's 2017 amended final order on permanent injunction, which prohibits them from placing fences on the easement in the future, is moot and not ripe for judicial determination. We disagree.

An issue presents a justiciable controversy when it presents (1) "'an actual, present and existing dispute, or the mature seeds of one,'" rather than a "'possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests,'" (3) which involves direct and substantial interests, "'rather than potential, theoretical, abstract or academic'" interests, "'and (4) a judicial determination of which will be final and conclusive.'"

*To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001) (quoting *Diversified Industr. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)). "Inherent in these four requirements are the traditional limiting doctrines of standing, mootness, and ripeness, as well as the federal case-or-controversy requirement." *To-Ro Trade Shows*, 144 Wn.2d at 411.

The Doyles rely on *Lakewood Racquet Club, Inc. v. Jensen*[6] to argue that the superior court's jurisdiction is limited to "interests that must be direct and substantial, rather than potential, theoretical, abstract[,] or academic." Br. of Resp. at 22. But here, the issue regarding the location of the wire and cedar fences within the easement area is not academic because the Doyles' fences were problematic when the superior court issued the 2017 amended final order on permanent injunction. Additional fences constructed within the easement would raise further issues creating the need for a remedy by the court. Thus, the fence issue is ripe for judicial determination and we hold that the Doyles' claim fails.

C.  NUMBER OF VEHICLES PARKED ON EMPRESS PROPERTY

The Doyles argue that the superior court erred when it allowed a total of 68 vehicles to park on the Empress property in its 2017 amended final order on permanent injunction. We hold that the superior court did not err.

We review a superior court's decision following a bench trial to determine whether its findings of fact are supported by substantial evidence and, in turn, whether those findings support its conclusions of law. *Endicott v. Saul*, 142 Wn. App. 899, 909, 176 P.3d 560 (2008). The party challenging a finding of fact bears the burden of showing that the record does not support the

---

[6] 156 Wn. App. 215, 223, 232 P.3d 1147 (2010).

superior court's finding. *Scott's Excavating Vancouver, LLC v. Winlock Props. LLC,* 176 Wn. App. 335, 342, 308 P.3d 791 (2013). Substantial evidence is the quantum of evidence sufficient to persuade a fair-minded person of the truth of the finding. *Endicott*, 142 Wn. App. at 909. In determining the sufficiency of the evidence, we consider only the evidence favorable to the prevailing party. *Endicott,* 142 Wn. App. at 909. We defer to the superior court's evaluation of the persuasiveness of the evidence. *Endicott*, 142 Wn. App. at 909.

Here, the superior court found, in relevant part:

> Currently, the Empress Estates' property has 30 spaces and the Embratora property has 25 spaces. Therefore, there are 55 spaces available, allowing for 55 vehicles. Thirteen additional spaces are planned next to the Event Center. When they are constructed the total spaces will be 68, allowing for 68 vehicles.

CP at 586-87. The amended final order on permanent injunction explicitly states that Saleem is permitted "a total of 68 parking spaces as provided in the [s]ite [p]lan." CP at 281.

The Doyles are responsible for explaining why the record does not support the superior court's finding, but instead they argue that 38 designated parking stalls on the site plan are located outside the easement area. Because the Doyles fail to show that the superior court's findings of fact are not supported by the evidence, we hold that the superior court did not err when it allowed a total of 68 vehicles to park on the Empress property as approved by the county.[7]

---

[7] The Doyles' argument appears to be a collateral attack of the county's land use decision regarding the Empress property. Because this issue is more properly raised in a land use petition act proceeding, we do not address it further.

D.  SPEED BUMPS

The Doyles initially argue that the superior court's amended final order on permanent injunction requiring them to remove a speed bump is not supported by any evidence that the speed bump interferes with Saleem's easement rights.  However, the Doyles conceded at oral argument that the superior court properly ruled that removal of a speed bump was appropriate.  Thus, we hold that the superior court did not err.

## CONCLUSION

We hold that the superior court did not abuse its discretion by requiring Saleem, as the party asking for both a preliminary injunction and an amended preliminary injunction, to post a bond while not requiring the Doyles to post a bond.  We also hold that the superior court erred by imposing a $500 civil fine and a $1,500 damage award against Saleem for contempt violations because they were punitive sanctions and vacate both sanctions.  We further hold that the superior court did not abuse its discretion by holding Saleem in contempt for violating the 2015 amended

order for preliminary injunction by allowing more than 30 vehicles to park on his property. As to the Doyles' cross appeal, we hold that all of their arguments fail. Thus, we affirm in part, reverse in part, and vacate the sanctions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, A.C.J.

RUMBAUGH, J.P.T.