49 P.3d 924 (2002)
112 Wash.App. 180
Charles M. COLE, a single person, Appellant,
v.
Michael LAVERTY and Gay Laverty, husband and wife, Respondents.
No. 20418-9-III.
Court of Appeals of Washington, Division 3, Panel Six.
June 20, 2002.
*925 Scott C. Broyles, Clarkston, for Appellant.
Thomas L. Ledgerwood, Clarkston, for Respondents.
SCHULTHEIS, J.
When Charles Cole bought a parcel of land in 2000, his deed included an easement for ingress, egress, and utilities across the south 16 feet of land owned by Michael and Gay Laverty. The Lavertys had blocked access to this area in 1983 with a fence, locked gates, and two bathtubs used as planters. Mr. Cole brought suit to quiet title in the easement and the Lavertys counterclaimed, arguing the easement was terminated by adverse possession. The trial court granted partial summary judgment to Mr. Cole, quieting title to an easement for access and repair of utilities, but also granted partial summary judgment to the Lavertys, terminating that portion of the easement dedicated to ingress and egress.
On appeal, Mr. Cole contends the Lavertys failed to establish adverse possession sufficient to terminate his dominant interest in the easement. Because we find that the Lavertys failed to establish that their possession was specifically adverse to the dominant estate owners, we reverse and remand.

FACTS
The easement at issue was created by quitclaim deed in an instrument recorded in 1963. According to that document, the easement was "for driveway purposes and for the location and maintenance of water pipe lines and public utility connections on, over and across the South sixteen (16) feet of the North half of the North half of Lot One." Clerk's Papers (CP) at 35. Darl and Bessie Welker owned the property to the west of the easement and were the dominant estate holders. Later, they purchased the portion of Lot One that contained the easement, terminating the easement due to the merger of titles. See Radovich v. Nuzhat, 104 Wash.App. 800, 805, 16 P.3d 687 (2001) (when the dominant and servient estates of an easement come into common ownership, the easement is extinguished). Thereafter, the easement was resurrected when the Welkers expressly stipulated to it in subsequent conveyances. Id. at 805-06, 16 P.3d 687.
The Lavertys purchased the properties over which the easement runs in 1977 and 1983. Because "[p]eople were coming and going across the south 16 feet of [their] property and [they] wanted to stop them from doing so," they fenced their property in *926 1983, installed locked gates on each end of the easement, and placed two old bathtubs across the west end, filled with dirt to act as planters. CP at 74. They did not interfere with the utilities that ran through the easement to the dominant estate.
Mr. Cole purchased the property that benefited from the easement in 2000. His attorney sent a letter to the Lavertys in October 2000 demanding that they remove the obstructions from the easement. When they refused to comply, he filed a complaint to quiet title and ejectment in November 2000. In answer, the Lavertys denied that the easement ever existed, or argued that even if it did, it was extinguished by subsequent conveyance or by adverse use. Both parties moved for summary judgment. Finding that the easement had been used for utilities for over 25 years, the trial court granted partial summary judgment to Mr. Cole, quieting title to an easement for utilities and the right to service utilities. Further finding that the Lavertys had blocked ingress and egress over the easement in 1983, the trial court also granted partial summary judgment to the Lavertys, terminating the easement for ingress and egress. Mr. Cole's motion for reconsideration was denied and this appeal followed.

DISCUSSION
The sole issue on appeal is whether the Lavertys sufficiently established hostile, exclusive use of the express easement for ingress and egress to justify summary judgment termination of the easement by adverse possession. Mr. Cole contends the Lavertys failed to prove an adverse use that extinguished the easement. In reviewing the summary judgment, we engage in the same inquiry as the trial court, viewing the evidence de novo in the light most favorable to Mr. Cole. CR 56(c); Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982); Lloyd v. Montecucco, 83 Wash.App. 846, 852, 924 P.2d 927 (1996). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wilson, 98 Wash.2d at 437, 656 P.2d 1030.
To establish adverse possession, the claimant must show use that was open, notorious, continuous, uninterrupted, and adverse to the property owner for the prescriptive period of 10 years. RCW 7.28.010; Beebe v. Swerda, 58 Wash.App. 375, 383, 793 P.2d 442 (1990). As with any possessive interest in property, an easement can be extinguished through adverse use. City of Edmonds v. Williams, 54 Wash.App. 632, 634, 774 P.2d 1241 (1989). In such a case, however, the servient estate owner who seeks to extinguish the easement is already in possession of the property. I WASHINGTON STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 10.6(7) (3d ed.1997). Consequently, to start the prescriptive period, the adverse use of the easement must be clearly hostile to the dominant estate's interest in order to put the dominant estate owner on notice. Id.
Hostile use is difficult to prove. The servient estate owner has the right to use his or her land for any purpose that does not interfere with enjoyment of the easement. Beebe, 58 Wash.App. at 384, 793 P.2d 442. Proper use by the servient estate owner is generally a question of fact that depends largely on the extent and mode of the use. Thompson v. Smith, 59 Wash.2d 397, 408, 367 P.2d 798 (1962). If the dominant estate has established use of an easement right of way, obstruction of that use clearly interferes with the proper enjoyment of the easement. However, if an easement has been created but has not yet been used by the dominant estate, adverse use by the servient estate is more difficult to prove. See, e.g., Beebe, 58 Wash.App. at 383-84, 793 P.2d 442; Edmonds, 54 Wash.App. at 636, 774 P.2d 1241.
Mere nonuse, no matter how long, will not extinguish an easement. Thompson, 59 Wash.2d at 407, 367 P.2d 798. During the period of nonuse, the servient estate may use the land subject to the easement in any way that does not permanently interfere with the easement's future use. Id.; Edmonds, 54 Wash.App. at 636, 774 P.2d 1241. For example, if an easement has been created and no occasion has arisen for its use, the owner of the servient estate may fence the land and that use will not be considered adverse until *927 (1) the need for the right of way arises, (2) the owner of the dominant estate demands that the easement be opened, and (3) the owner of the servient estate refuses to do so. Id. at 636-37, 774 P.2d 1241.
In Thompson, the servient owner poured a concrete slab over a reserved roadway easement. Because the right of way was not in use at the time, the Supreme Court held that the concrete slab, which was used to store vehicles and lumber, did not interfere with the interest of the dominant estate. Thompson, 59 Wash.2d at 409, 367 P.2d 798. Quoting City of Pasadena v. California-Michigan Land & Water Co., 17 Cal.2d 576, 583, 110 P.2d 983 (1941), Thompson noted that the respective rights of the dominant and servient owners "`are not absolute, but must be construed to permit a due and reasonable enjoyment of both interests so long as that is possible.'" Id. at 409, 367 P.2d 798. See also Mueller v. Hoblyn, 887 P.2d 500, 508-09 (Wyo.1994), and cases cited therein, (showing the rights of servient estate owners to use land burdened by an unused easement).
Mr. Laverty's affidavit in support of the counter motion for summary judgment indicates that in 1983 the Lavertys fenced their property and installed locked gates and bathtub planters because "[p]eople were coming and going across the south 16 feet of [their] property and [they] wanted to stop them from doing so." CP at 74. As the servient estate owners, the Lavertys had the right to fence their property against use by the general public. See Edmonds, 54 Wash. App. at 636, 774 P.2d 1241. General prevention of people coming and going across their land was an appropriate and reasonable use. What the record does not show is whether Mr. Cole's predecessors ever used the easement right of way. The Cole property had alternative access on its southern border. If the owners of the Cole property had desired use of the easement across the Laverty property before or after 1983, any evidence of that desire is conspicuously absent from the record.
Washington law does not favor termination of easements. Edmonds, 54 Wash. App. at 636, 774 P.2d 1241. To support summary judgment termination of the easement for ingress and egress in this case, the Lavertys had to show that there was no issue of material fact regarding their adverse use for the prescriptive period. Lloyd, 83 Wash. App. at 852, 924 P.2d 927.
The Lavertys fail to establish that their obstruction of the easement was sufficiently adverse to the interests of Mr. Cole or his predecessors to justify summary judgment as a matter of law. Issues of fact remain concerning former use of the easement by the dominant estate owners. In other words, if Mr. Cole's predecessors never used the easement, the Lavertys' actions in fencing the property were adverse only to those members of the general public who formerly traversed it. The fence, locked gates, and bathtub planters do not constitute permanent obstructions that would otherwise put Mr. Cole's predecessors on notice that the Lavertys were asserting hostile, exclusive interest over the easement. See Edmonds, 54 Wash. App. at 637, 774 P.2d 1241 (construction of a fence is not a sufficiently inconsistent use to constitute adverse possession). Because the record, when viewed in the light most favorable to Mr. Cole, does not establish that the easement's obstruction was adverse to the dominant estate, we reverse the summary judgment that was granted to the Lavertys and remand for trial.
Reversed and remanded.
WE CONCUR: SWEENEY and KURTZ, JJ.