[No. 41448-1-II.   Division Two.   June 5, 2012.]

PETER LITTLEFAIR, *Appellant*, v. DAVID SCHULZE ET AL., *Respondents*.

660

*George A. Kolin*, for appellant.

*Bradley W. Andersen* and *Phillip J. Haberthur* (of *Schwabe Williamson & Wyatt*), for respondents.

¶1 ARMSTRONG, J. — Peter Littlefair and David Schulze own property in Foster's Addition, which they access by a 40-foot-wide easement road. The actual road varies in width but is generally a one-lane roadway. In 2007, Schulze constructed a fence on his property, which lies within the 40-foot wide reserved area. Littlefair sued Schulze, essentially asking the court to order Schulze to remove the fence. The trial court denied Littlefair relief, finding that Schulze's fence did not interfere with Littlefair's use of the road and that the fence was not a nuisance based on its violation of a Skamania County zoning ordinance. We reverse.

## FACTS

¶2 Littlefair bought lots 10 and 11 in Foster's Addition (Fosters) at the end of the private road in 1983 and 1984. Schulze bought lots 8 and 9 on the north side of the private road in 1980 and 1987. Fosters was established in 1977, and all lots are subject to the "Declaration of Conditions and Restrictions of Foster's Subdivision." The Fosters' plat map designates a 40-foot-wide strip of land as "Gordon Road (private)." Gordon Road leaves the county road, Foster Road; enters Fosters; and ends with a cul-de-sac in front of Littlefair's property.

¶3 Gordon Road was constructed before anyone bought property in Fosters. Littlefair testified that the road was "graded 40 feet wide" in 1977. Report of Proceedings at 74. Schulze testified that Gordon Road never spanned the entire easement area on the plat map, and it was never paved.

¶4 In 2007, Schulze erected a fence that runs parallel to Gordon Road on the north side. On the south side of Gordon Road, Schulze has kept several pieces of personal property,

including log decks,[1] trailers, and vehicles. Schulze has plowed Gordon Road during the winter, more recently using a tractor that according to Littlefair, pulled up substantial amounts of the rock covering the road.

¶5 In August 2009, Littlefair sued Schulze, seeking, among other things, (1) to remove Schulze's fence from the easement on the basis of ejectment under former RCW 7.28.010 (1911)[2] and nuisance per se because it violates a county zoning ordinance; (2) to recover the reasonable rental value of Schulze's improper use of the easement; and (3) for damages for obstructing the road easement.

¶6 The trial judge found the following: the 40-foot wide easement was created to give access to Littlefair's lots and to allow utility lines; historically, the parties have used only a 12- to 14-foot-wide one-lane road with "enough room to comfortably pull a vehicle off to the side to let another car pass"; Schulze's fence runs parallel to the roadway, does not project into the roadway, and allows use of the roadway consistent with its historical use; and Schulze's log decks and other personal property on the south side of Gordon Road create a "cow chute" on the roadway that does inhibit the historical use of Gordon Road by reducing the space for cars to pass. Clerk's Papers (CP) at 61-62.

¶7 The trial court concluded that it could not order Schulze to remove the fence because he was entitled to use his servient estate in any reasonable manner consistent with the easement's purpose. But the court enjoined Schulze from keeping log decks or other personal property

---

[1] "Log decks" are contraptions that hold large logs above ground until the logs are put to use. WOOD-MIZER PRODUCTS, INC. http://www.woodmizer.com/us/Industrial Equipment/MaterialHandling/LogDeck.aspx (last visited May 9, 2012).

[2] Former RCW 7.28.010 reads in pertinent part:

Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action . . . to be brought against the tenant in possession; if there is no such tenant, then against the person claiming the title or some interest therein, and may have judgment in such action quieting or removing a cloud from plaintiff's title.

In 2011, the legislature updated this statute to be gender neutral.

on the south side of Gordon Road. Finally, the court refused to enforce a Skamania zoning ordinance that prohibits building structures in an easement because (1) the "[z]oning laws are in derogation of common law," which clearly allows structures to be erected within easements under appropriate circumstances; (2) "Skamania County is laced with easements that have structures on them"; and (3) enforcing this zoning ordinance would "wreak havoc on the county's ability to have any reasonable land use proceedings whatsoever." CP at 64.

## ANALYSIS

### I. STANDARD OF REVIEW

¶8 We review findings of fact for substantial supporting evidence. Evidence is substantial if it allows a rational, fair-minded person to find the disputed fact. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). We consider unchallenged findings to be verities on appeal. *In re Marriage of Brewer*, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). We review questions of law and conclusions of law de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). Conclusions of law must flow from the findings of fact. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999).

### II. SCOPE OF EASEMENT

¶9 Littlefair argues that the trial court erred in finding that Gordon Road was intended to be a one-way roadway of 12 to 14 feet in width because (1) historical use is not the correct standard to determine the width of the roadway and (2) the evidence does not support the finding. Schulze responds that (1) as the servient estate owner, he has the right to use the easement as long as he does not interfere with the easement's purpose and (2) substantial evidence

supports the trial court's finding that the roadway has always been 12 to 14 feet wide.

¶10 We interpret an easement as a mixed question of law and fact. *Dickie*, 149 Wn.2d at 880. The intent of the party who created the easement is a question of fact, whereas "the legal consequence of that intent is a question of law." *Dickie*, 149 Wn.2d at 880. To determine the parties' original intent, we look to the conveying instrument as a whole. *Dickie*, 149 Wn.2d at 880. If the plain language of the conveyance is unambiguous, we will not look beyond that language. *Dickie*, 149 Wn.2d at 880.

¶11 Here, the plat map for Fosters clearly denotes a 40-foot area labeled "Gordon Road (private)." Ex. 1. The deeds for both Littlefair's and Schulze's properties explicitly refer to the road and require the owners to comply with the plat map. Thus, substantial evidence supports the trial court's finding that the easement's language unambiguously reserves a 40-foot right-of-way for ingress, egress, and utilities.

¶12 A servient estate owner may use his property in any reasonable manner that does not interfere with the original purpose of the easement. *Thompson v. Smith*, 59 Wn.2d 397, 407, 367 P.2d 798 (1962). A court determines reasonable use from the facts as to the "mode of use of the particular easement." *Thompson*, 59 Wn.2d at 408 (citing *City of Pasadena v. Cal.-Mich. Land & Water Co.*, 17 Cal. 2d 576, 110 P.2d 983 (1941)). The rights of both dominant and servient estate owners are not absolute and " 'must be construed to permit a due and reasonable enjoyment of both interests so long as that is possible.' " *Cole v. Laverty*, 112 Wn. App. 180, 185, 49 P.3d 924 (2002) (internal quotation marks omitted) (quoting *Thompson*, 59 Wn.2d at 409).

¶13 Although the law disfavors termination of easements, "[a]n easement can be extinguished through adverse use by the owner of the servient estate." *City of Edmonds v. Williams*, 54 Wn. App. 632, 634, 636, 774 P.2d 1241 (1989). A servient estate owner may have difficulty

proving an adverse possession claim because most uses are not hostile. *Cole*, 112 Wn. App. at 184. And mere nonuse of the easement by the dominant estate does not extinguish the easement owner's right to the easement. *Thompson*, 59 Wn.2d at 407. For example, where an easement is not being used, the servient owner may build a fence in the easement, and that use is not adverse until "(1) the need for the right of way [exists], (2) the owner of the dominant estate demands that the easement be opened, and (3) the owner of the servient estate refuses to do so." *Cole*, 112 Wn. App. at 185 (citing *Williams*, 54 Wn. App. at 636-37). But where the servient estate owner creates an obstruction that "clearly interferes with the proper enjoyment of the easement," such use may lead to an adverse possession claim by the servient owner if the dominant estate owner currently uses the easement. *Cole*, 112 Wn. App. at 185. Thus, where a servient owner constructs a permanent fence and concrete patio within a used common area easement in a subdivision, such construction can meet the elements of an adverse possession claim. *See generally Timberlane Homeowners Ass'n v. Brame*, 79 Wn. App. 303, 311, 901 P.2d 1074 (1995).

¶14 Schulze, as the servient owner, is entitled to enjoy the full use of his property, but he cannot build structures that although arguably not interfering with current easement use, would by adverse possession principles deny the easement owners their right to the future expanded easement use. *Cole*, 112 Wn. App. at 185 ("During the period of nonuse, the servient estate may use the land subject to the easement in any way that does not permanently interfere with the easement's future use." (citing *Thompson*, 59 Wn.2d at 407)). It follows that a dominant estate owner has the right to protect his rights in the easement by requiring the servient estate owner to remove any structure that could deny the easement owner his full easement rights. *See generally Brame*, 79 Wn. App. at 311 (recognizing that the right to use an easement can be lost by a successful adverse possession claim); *see also Cole*, 112 Wn. App. at 184-85.

¶15 In *Thompson*, 59 Wn.2d at 399-403, our Supreme Court considered an easement for ingress and egress that lay partially on property of both the south and north landowners of a subdivision. The existing road was constructed fully outside the easement area and fully within the servient owner's property, north of the easement. *Thompson*, 59 Wn.2d at 403. The designated easement area had never been used as a road. *Thompson*, 59 Wn.2d at 402. The servient owner laid a concrete slab south of the existing road, but the slab intruded on the dedicated and unused easement area. *Thompson*, 59 Wn.2d at 403. The Supreme Court held that it would be improper to require the servient owner to remove the concrete slab because there was no evidence that the area where the slab crossed into the easement had ever been used as a road or that there was a future plan to use the easement area for a road. *Thompson*, 59 Wn.2d at 409. The court noted, however, that if an easement owner sought to use the easement for a road in the future, the servient estate owner would have to remove the concrete slab. *Thompson*, 59 Wn.2d at 409.

¶16 Schulze relies on *Thompson* in arguing that as the servient owner, he is entitled to fence his property. But in *Thompson*, 59 Wn.2d at 409, no easement owner was currently using the road and there was no evidence of any planned future use. In contrast, the easement here is regularly used for ingress, egress, and utilities, and Schulze's fence appears to be a permanent structure that could establish an adverse possession claim by Schulze; if so, Littlefair is entitled to have it removed to prevent loss of a major portion of the 40-foot easement.

¶17 Also, the trial court's findings do not support its conclusions because the trial court failed to consider or account for the ancillary uses of the easement, such as maintenance of the road, which are expressly included in the conveyance language. *See Brown v. Voss*, 105 Wn.2d 366, 371, 715 P.2d 514 (1986) (where the language of an express easement is unambiguous, courts look to the origi-

nal grant to determine the easement's permitted uses); *see also 810 Props. v. Jump*, 141 Wn. App. 688, 699, 170 P.3d 1209 (2007) (An easement's scope generally does "not contract merely because the holder fails to use the entire easement area."). Here, Fosters plat map clearly established a 40-foot easement for ingress and egress.

¶18 Littlefair testified that the fence prevented the road users from pushing snow off the road on the fence side as they did on other parts of the road; Schulze did not dispute this testimony. Littlefair also testified that the fence prevented him from driving around potholes in the road. Schulze admitted that he built the fence, in part, to prevent drivers from driving around the potholes in the existing roadway. The evidence supports the trial court's finding that historically the parties had driven on only 12 to 14 feet of the easement. And Littlefair is also entitled to reasonable use of the land on either side of the 12 to 14 feet for traversing the road and snow removal. *See Cole*, 112 Wn. App. at 185 (the easement should be construed to allow for reasonable use of both dominant and servient estate owners); *see also Dickie*, 149 Wn.2d at 880 (if the easement instrument is unambiguous, we do not look beyond that language).

¶19 The trial court erred by failing to address the possibility that Schulze's fence could support an adverse possession claim for a major part of the easement. And the trial court's findings do not support its conclusions because the court failed to consider the ancillary uses of the road expressly granted in the easement, which Schulze did not contest. But we need not remand for the trial court to address these issues because the county ordinance discussed below compels the conclusion that the court should have ordered Schulze to remove his fence.

### III. Nuisance Per Se

¶20 Littlefair also assigns error to the trial court's conclusion that the fence is legal[3] and thus does not constitute a nuisance per se based on a county ordinance that prohibits building structures in an easement. He argues, in part, that the fence is illegal because it does not comply with Skamania County zoning codes. We agree.

¶21 Several conclusions of law relate to this argument. Finding of fact 12 states that there is nothing inherently illegal about the fence. Conclusion of law 11 states that the zoning laws are in derogation of common law and allow fences under the circumstances of this case. Conclusion 12 states that the Skamania zoning code does allow structures within easements as seen throughout the county, thus the nuisance per se action fails. Conclusion 13 states that the enforcement of the zoning code prohibiting structures in easements would "wreak havoc on the county's ability to have any reasonable land use proceedings . . . ." CP at 64.

¶22 "A nuisance per se is an act, thing, omission, or use of property which of itself is a nuisance, and hence is not permissible or excusable under any circumstance." *Tiegs v. Watts*, 135 Wn.2d 1, 13, 954 P.2d 877 (1998) (citing *Hardin v. Olympic Portland Cement Co.*, 89 Wash. 320, 154 P. 450 (1916)). Violation of a zoning ordinance can be a nuisance per se. *See generally Morin v. Johnson*, 49 Wn.2d 275, 278-79, 300 P.2d 569 (1956).

¶23 Where a zoning ordinance is unambiguous, we must construe it to achieve its plain purpose and intent. *Dev. Servs. of Am., Inc. v. City of Seattle*, 138 Wn.2d 107, 117, 979 P.2d 387 (1999) (quoting *State ex rel. Standard Mining & Dev. Corp. v. City of Auburn*, 82 Wn.2d 321, 326,

---

[3] We review this mislabeled finding of fact, that the fence is not inherently illegal, as a conclusion of law. *See State v. Niedergang*, 43 Wn. App. 656, 658-59, 719 P.2d 576 (1986) (stating that conclusions of law are "determination[s] . . . made by a process of legal reasoning from facts in evidence.").

510 P.2d 647 (1973)). We are mindful, though, that zoning ordinances " 'are in derogation of the common-law right to use property so as to realize its highest utility and should not be extended *by implication* to cases not clearly within the *scope* . . . manifest in their language.' " *Dev. Servs. of Am. Inc.*, 138 Wn.2d at 117 (quoting *City of Auburn*, 82 Wn.2d at 326). If a zoning ordinance is ambiguous, we construe it in favor of the property owner. *Mall, Inc. v. City of Seattle*, 108 Wn.2d 369, 378, 739 P.2d 668 (1987).

¶24 The applicable county ordinances for R-2 zone classification in Skamania County state that "[n]o building or structure may be located within any easement." SKAMANIA COUNTY CODE (SCC) 21.32.050(D)(3). "Structures" are defined by the code as "anything constructed or erected with a fixed location on the ground . . . including . . . fences." SCC 21.08.010.[4] The Skamania code is clear: property owners cannot construct fences within easements. The ordinance applies to the property here because the subdivision is zoned R-2. Thus, the fence fits with the unambiguous scope of the ordinance. Under the Skamania code, the fence constitutes a nuisance per se.

¶25 The trial court reasoned, however, that Skamania County was "laced with easements that have structures on them" and that enforcing the zoning ordinance would "wreak havoc on the county's ability to have any reasonable land use proceedings whatsoever." CP at 64. But the ordinance is clear, leaving no room for an interpretation that strays from such plain meaning. *Dev. Servs. of Am., Inc.*, 138 Wn.2d at 117. And absent some constitutional problem with the ordinance, courts have no power to nullify it. *See generally Duckworth v. City of Bonney Lake*, 91 Wn.2d 19, 26-27, 586 P.2d 860 (1978). Whether the county will encounter problems enforcing the ordinance is an issue for the county commissioners to resolve. The trial court erred in

---

[4] The published version and the version passed by the county commissioners are not formatted in the same way, but substantively there is no difference. We cite the official version as passed by the county commissioners.

concluding that the fence was not inherently illegal and, therefore, not a nuisance per se.

¶26 In conclusion, Schulze's fence appears to be a sufficiently permanent structure that could support an adverse possession claim thereby interfering with Littlefair's use of the easement. Littlefair has the right to protect against such interference. But we need not remand to the trial court to address that issue because the fence violates the county ordinance prohibiting such structures in an easement. Accordingly, we reverse and remand for the trial court to enter an order requiring Schulze to remove the fence and other remaining obstructions to the road easement.

WORSWICK, C.J., and VAN DEREN, J., concur.

After modification, further reconsideration denied September 25, 2012.

Review denied at 176 Wn.2d 1018 (2013).