IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| LINGERING PINE INVESTMENTS, LLC, a Washington limited liability company, | No. 78962-7-I |
| Respondent, | |
| v. | |
| RUPESH KHENDRY and SUZY KHENDRY, and the marital community comprised thereof, | UNPUBLISHED OPINION |
| Appellants. | FILED: November 12, 2019 |

VERELLEN, J. — Rupesh and Suzy Khendry appeal from the trial court order granting summary judgment in favor of Lingering Pine Investments, LLC (LPI) on its action to establish the parties' rights with respect to a tract of land. Because the evidence did not give rise to any questions of fact regarding the property interests at issue, we affirm the trial court's order.

## FACTS

In 2006, Poplar Way, LLC obtained approval for a boundary line adjustment increasing the size of a parcel of undeveloped land, Lot 6, it owned in the city of Sammamish. As to Lot 6, the boundary line adjustment also stated: "Together with

an easement for ingress, egress, and utilities over, under, and across the south 20 feet of Lot 17 of said Plat."[1]  A map of adjoining Lots 6 and 17 is depicted below.[2]



In 2007, construction began on the residence that is now located on Lot 17. This construction included landscaping and a rock wall along the property's southern boundary and a fence along its eastern boundary.[3]  At some point, Tyler and Farrah Borup purchased Lot 17.

---

[1] Clerk's Papers (CP) at 42.

[2] The map is taken from the approved boundary line adjustment, an exhibit before the trial court.

[3] The fence on Lot 17 blocked access to Lot 6.

2

In 2012, Confidential Capital, LLC acquired title to Lot 6 by way of foreclosure.

In February 2013, the Borups sold Lot 17 to the Khendrys.[4] The statutory warranty deed to the Khendrys referenced the 2006 boundary line adjustment easement as follows:

> A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS AS DELINEATED ON SAID PLAT.
>
> Subject To: This conveyance is subject to covenants, conditions, restrictions and easements, if any, affecting title, which may appear in the public record, including those shown on any recorded plat or survey.[5]

In May 2013, Confidential Capital sent a letter to the Khendrys, expressing "shock" that the Khendrys "were not advised of the easement through [their] property" and inquiring about the Khendrys' desire to purchase Lot 6 to use it as "a green buffer."[6] The letter also stated that if the Khendrys did not or could not acquire Lot 6, Confidential Capital would put Lot 6 on the market and, in that regard, would need 20 feet of the Khendrys' "fence removed from the easement."[7]

In September 2017, Confidential Capital sold Lot 6 to LPI. The legal description in the bargain and sale deed to LPI included the following: "Together with a non-exclusive easement over and across the south 20 feet of Lot 17 of said Plat."[8]

---

[4] When the Khendrys purchased Lot 17, the fence along the eastern boundary was still in place. At some point in 2013, a children's play set that previously existed in the easement area was removed.

[5] CP at 47-48 (boldface omitted).

[6] CP at 72.

[7] CP at 72.

[8] CP at 44.

3

That same month, an LPI representative spoke to the Khendrys at their home. The representative revealed that LPI had purchased Lot 6 and intended to build a home on it.[9] The Khendrys denied LPI's request to access Lot 6 through the easement across Lot 17.[10]

In March 2018, LPI filed a complaint against the Khendrys to quiet title. LPI also sought ejectment, requiring the Khendrys to remove any obstructions from the easement. The Khendrys answered the complaint and alleged counterclaims for trespass, adverse possession, and to quiet title.

In July 2018, LPI moved for summary judgment, arguing (1) an easement that has not been used may not be extinguished by adverse possession, and (2) it was entitled to an award of attorney fees pursuant to RCW 7.28.083(3).[11] The Khendrys opposed the motion. The trial court granted LPI's motion but denied its request for an award of attorney fees.

The Khendrys appeal.

## ANALYSIS

We review a motion for summary judgment de novo.[12] All facts and reasonable inferences are considered in the light most favorable to the nonmoving

---

[9] Lot 6 was still undeveloped land at that time.

[10] In March and April 2018, the Khendrys reiterated their refusal to grant LPI access to Lot 6 via Lot 17.

[11] CP at 30-37.

[12] Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

party.[13] Summary judgment is appropriate if there are no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[14]

*I. Quiet Title and Ejectment Issues*

The Khendrys first argue that LPI "did not properly present the quiet title or ejectment issues to the trial court for resolution on summary judgment."[15] We disagree.

LPI's summary judgment motion asked "to have title to its easement quieted in [LPI's] name and have [the Khendrys] ordered to remove all obstructions from the easement so that LPI may access its property."[16] In their response to LPI's motion, the Khendrys acknowledged the quiet title and ejectment issues and argued questions of material fact precluded summary judgment. Then, at the summary judgment hearing, the Khendrys expressly argued, "[T]his is a case that was commenced by the plaintiff for quiet title and ejectment, and the motion for summary judgment is a motion for summary judgment on those two claims."[17]

Based on this record, it is clear that the parties adequately raised, and the trial court properly considered, the issues of quiet title and ejectment.

---

[13] Id.

[14] Cole v. Laverty, 112 Wn. App. 180, 184, 49 P.3d 924 (2002).

[15] Br. of Appellants at 6-8.

[16] CP at 30.

[17] Report of Proceedings (RP) (Aug. 10, 2018) at 14 (emphasis added).

## II. Easement Validity

The Khendrys next argue that, even if quiet title and ejectment were properly raised, summary judgment was not warranted because LPI failed to meet its burden of showing "that the [boundary line adjustment] created a valid easement for ingress, egress and utilities over the south 20 feet of the Khendrys' property."[18] We reject this argument.

At the summary judgment hearing, the Khendrys conceded that the boundary line adjustment created a valid easement:

> THE COURT: And I don't think the Court has to even go to that issue because the easement was already granted by a boundary line readjustment. So even if there is other accesses to Lot 6, I'm not being asked to determine whether or not the easement is valid. I think that that's conceded. The easement is a valid easement, or did I miss something?
>
> [KHENDRYS' COUNSEL]: There was an easement created by the boundary line adjustment.[19]

Under RAP 9.12, our review of an order granting summary judgment is limited to the "evidence and issues called to the attention of the trial court." Thus, "[a]n argument neither pleaded nor argued to the trial court cannot be raised for the first time on appeal."[20] To allow otherwise "would be to undermine the rule that an

---

[18] Br. of Appellants at 9.

[19] RP (Aug. 10, 2018) at 11 (emphasis added). Moreover, in other portions of the record before the trial court on summary judgment, the Khendrys appear to acknowledge the existence of the easement that they now contest. See CP at 135, 137.

[20] Silverhawk, LLC v. KeyBank Nat. Ass'n, 165 Wn. App. 258, 265, 268 P.3d 958 (2011); see also Cano-Garcia v. King County, 168 Wn. App. 223, 248, 277 P.3d 34 (2012) (issue not properly preserved where proponent neither raised it in the response brief nor argued it at the summary judgment hearing).

appellate court is to engage in the same inquiry as the trial court in reviewing an order of summary judgment."[21]

The Khendrys' current challenge to the validity of the easement was never "called to the attention of the trial court,"[22] and the trial court accepted their concession that the easement was valid. Therefore, consistent with RAP 9.12, the Khendrys' challenge to the easement's validity is not properly raised on appeal.

### III. Adverse Possession

Lastly, the Khendrys contend that, even if the easement is valid, material questions of fact exist whether the easement was terminated by adverse possession. We disagree.

The Khendrys counterclaimed that they and their predecessors in interest adversely possessed the easement since 2007. To establish adverse possession, a claimant must prove that possession of the property was "(1) open and notorious, (2) actual and uninterrupted, (3) exclusive, (4) hostile and under a claim of right, (5) for a period of 10 years."[23] To start the prescriptive period, the Khendrys' "adverse use of the easement must be clearly hostile to the dominant estate's interest in order to put the dominant estate owner on notice."[24]

---

[21] Wash. Fed'n of State Emps., Council 28, AFL-CIO v. Office of Fin. Mgmt., 121 Wn.2d 152, 163, 849 P.2d 1201 (1993).

[22] RAP 9.12.

[23] Shelton v. Strickland, 106 Wn. App. 45, 50, 21 P.3d 1179 (2001).

[24] Cole, 112 Wn. App. at 184.

The Khendrys had the right to use the property subject to the easement in any way that did not permanently interfere with LPI's reserved easement.[25] Here, it is undisputed that the Khendrys' predecessors-in-interest placed a fence, landscaping, and rockery in the easement area. But in analyzing whether a particular use was inconsistent with or permanently interfered with LPI's reserved easement, we consider several factors. For example, if an easement is not being used, a servient owner's construction of a fence upon the easement is not "adverse until (1) the need for the right of way arises, (2) the owner of the dominant estate demands that the easement be opened, and (3) the owner of the servient estate refuses to do so."[26]

Even when viewed in the light most favorable to the Khendrys, it was not until May 2013, when they received and rejected Confidential Capital's request to remove the fence to allow it access to Lot 6, that a prescription period could have commenced. Prior to May 2013, the need for use of the easement had not arisen, none of the past owners of the easement had demanded that the easement be made available for access, and the Khendrys had not refused to do so. Even viewed in a light most favorable to the Khendrys, they were using the easement in a hostile manner for less than 10 years when they commenced their adverse possession counterclaim. The trial court did not err in dismissing it on summary judgment.

---

[25] Id. at 185. A servient estate owner may use the land for any purpose "not inconsistent with its ultimate use for reserved easement purposes during a period of nonuse." Beebe v. Swerda, 58 Wn. App. 375, 384, 793 P.2d 442 (1990).

[26] Cole, 112 Wn. App. at 185.

## IV. Attorney Fees on Appeal

LPI requests an award of attorney fees on appeal under RAP 18.9(a) and RCW 7.28.093(3). We deny in part, and grant in part, LPI's request.

RAP 18.9(a) permits this court to award a party attorney fees when the opposing party files a frivolous appeal.[27] "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal."[28] We conclude that the Khendrys' appeal is not frivolous because their adverse possession claim presents debatable issues. Thus, we deny LPI's request under RAP 18.9(a).

"The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity."[29] RCW 7.28.083(3) entitles the prevailing party to reasonable attorney fees and costs in an action asserting title to real property by adverse possession.[30]

Here, the Khendrys filed a counterclaim against LPI, asserting title to the easement under a theory that the easement had "extinguished by adverse

---

[27] Reid v. Dalton, 124 Wn. App. 113, 128, 100 P.3d 349 (2004).

[28] Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010)).

[29] Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014).

[30] "The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just." RCW 7.28.083(3).

possession."[31] The parties briefed and argued the adverse possession issue both below, on summary judgment, and on appeal. Because the adverse possession counterclaim was asserted as a theory supporting a claim of title to real property, we conclude that RCW 7.28.083(3) supports an award of reasonable attorney fees to LPI on appeal. However, we limit the award to fees reasonably incurred only on the adverse possession issue.

The Khendrys rely on McColl v. Anderson,[32] to argue that attorney fees under RCW 7.28.083(3) do not apply "here because this is not an action asserting title to real property by adverse possession."[33] Their reliance on McColl is misplaced. In McColl, the plaintiff asserted a "prescriptive easement" to cross the defendant's property and "requested a declaration establishing . . . prescriptive easements."[34] The defendant prevailed on summary judgment and was awarded attorney fees under RCW 7.28.083(3).[35] In reversing and vacating the attorney fees award on appeal, the McColl court stated: "Unlike adverse possession, a prescriptive easement does not quiet title to land[,]" and "[b]ecause a prescriptive easement claim does not actually assert title to property, RCW 7.28.083(3) does not apply to [plaintiff's]

---

[31] CP at 66-67. Accordingly, the Khendrys' adverse possession counterclaim was a separate cause of action from LPI's. See CR 13(a) (compulsory counterclaims); CR 13 (b) (permissive counterclaims); CR 54(b) ("When more than one claim for relief is presented . . . whether as a claim [or] counterclaim, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims[.]")

[32] 6 Wn. App. 2d 88, 92-93, 429 P.3d 1113 (2018) (Div. II).

[33] Reply Br. of Appellants at 6 (emphasis omitted).

[34] McColl, 6 Wn. App.2d at 90.

[35] Id.

prescriptive easement lawsuit."[36] Here, the record clearly establishes that the Khendrys' counterclaim for adverse possession was in the nature of a claim of absolute title to the disputed property and not a claim for some lesser interest.

In conclusion, we affirm the trial court's summary judgment order. We grant LPI its reasonable attorney fees on appeal concerning only the adverse possession issue, subject to compliance with RAP 18.1.

WE CONCUR:

---

[36] Id. at 92-93; but see Workman v. Klinkenberg, 6 Wn. App. 2d 291, 305-06, 430 P.3d 716 (2018) (Div. I) (concluding because adverse possession and prescriptive easement doctrines "'are often treated as equivalent[s]' and the elements required to establish [those doctrines] are the same, [RCW 7.28.083(3)] allows recovery for fees incurred on prescriptive easement claims.") (quoting Kunkel v. Fisher, 106 Wn. App. 599, 602-03, 23 P.3d 1128 (2001)).