

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No.  39062-4-III |
| KATHERINE ANDERSEN | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JASON TILSON, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Katherine Andersen appeals from the trial court's entry of a phased parenting plan that eventually resulted in a shared residential schedule for her and Jason Tilson's child, C.A.  Andersen argues that upon finding a history of domestic violence and alcohol abuse the trial court was statutorily required to impose limitations on Tilson's decision-making authority and residential time.  Alternatively, she contends that the trial court's parenting plan was an abuse of discretion.  We agree in part.

Upon finding a history of domestic violence, a trial court is required to impose restrictions on a parent's residential time unless the court makes additional findings set forth in RCW 26.09.191(2)(n). Here, the court made such findings, but the findings are insufficient to support the court's conclusion that the exception in RCW 26.09.191(2)(n) applies. Given the numerous allegations of domestic violence, the finding that Tilson's acts of domestic violence are "remote" is too conclusory to determine if the finding supports the conclusion.

A finding of domestic violence also precludes a court from requiring joint decision-making under RCW 26.09.191(1). This restriction has no exception. Thus, once the court found that Tilson has a history of domestic violence, it was error to require joint decision-making.

Otherwise, we agree with Tilson and conclude that the trial court did not abuse its discretion in structuring the parents' residential time in light of its findings on Tilson's alcohol use and treatment. We deny both parties their attorney fees on appeal with leave for the trial court to award Andersen her fees on remand.

BACKGROUND

C.A. is the child of Jason Tilson and Katherine Andersen, who separated shortly after C.A.'s birth in 2019. In the four years since their separation, the parties have continued to disagree over parenting plan provisions.

2

In January 2022, Andersen filed another proposed parenting plan, requesting limitations be placed on Tilson under RCW 26.09.191 for three reasons: domestic violence, substance abuse, and abusive use of conflict. Andersen requested that Tilson's residential time with C.A. be limited and she be given sole decision-making authority. Tilson opposed Andersen's proposed parenting plan and requested joint-decision making and a shared residential schedule.

At trial, Andersen presented evidence of multiple incidents of domestic violence allegedly perpetrated by Tilson over the span of several years against three different people, including herself. She presented the testimony of Breanna Hogan, who has two older children with Tilson. Hogan testified that while she was together with Tilson from 2009 to 2016, Tilson was physical with her on multiple occasions, usually after drinking alcohol. The last incident resulted in Tilson being arrested and convicted of fourth degree assault—domestic violence. Hogan also testified that for the immediately preceding year, Hogan and her children were protected by a domestic violence no contact order against Tilson stemming from an incident in which Tilson had picked up one of their children by the throat and thrown her into a chair. On cross-examination, Hogan admitted that she had previously written a declaration on behalf of Tilson in the parenting dispute with Andersen, stating that he was a good dad and was taking good care of C.A.

Andersen testified as well. She said that there had been multiple domestic violence incidents between her and Tilson and testified about specific incidents. She

testified that at one point she had obtained a restraining order against Tilson because he had contacted her employer. Andersen also testified that Tilson had an alcohol problem. She acknowledged that the current parenting plan allowed her to test Tilson for alcohol consumption when he picked up or dropped off C.A. Despite her allegations, according to Tilson, Andersen had only tested him once and the results were negative.

Andersen additionally testified that Tilson told her he had been diagnosed with mental health disorders. Andersen admitted that C.A.'s medical records indicated that C.A. had reported no domestic violence at C.A.'s doctor's appointments.

Tilson testified and denied Andersen's allegations. He said that Andersen frequently referred to him as "psycho," at times in front of C.A. However, he admitted that he had called Andersen names. He also said he bore partial responsibility for the poor communication between himself and Andersen. Tilson admitted that he had sought counseling following the death of his parents and had been diagnosed with mental health disorders. He said that he had significantly reduced his alcohol consumption, although admitted that he had four prior DUIs as well as a pending DUI charge.

Tilson denied ever being physically violent toward Andersen. He acknowledged that there was a domestic violence order in place against him but said he had never committed domestic violence around C.A. or when C.A. was in the house. He also testified that the investigation into Hogan's allegations that he had committed domestic violence against his daughter resulted in no findings.

4

Multiple witnesses who were friends with Tilson testified that he was a good father and interacted well with C.A.

In its oral decision, the trial court determined that both parties demonstrated that they were loving and caring parents. The trial court found that it was clear the parties did not get along and that there were issues with credibility and exaggeration on both sides. The trial court also noted that Tilson had testified that he had been diagnosed with mental health disorders but had sought counseling, and was taking medication as a result.

The trial court denied Andersen's request for limitations on Tilson's decision-making and residential time. The court found no abusive use of conflict, but noted that if it were to make such a finding, it would be that both parties engaged in such behavior.

In its oral decision, the court found that Tilson had a history of domestic violence but did not indicate which of the alleged incidents of domestic violence it found credible.[1] The court noted that Tilson disputed Hogan's claims of domestic violence against her. While acknowledging the protection order obtained by Andersen, the court commented that it had removed C.A. from the permanent order after finding that C.A. was not threatened by Tilson. And while characterizing Andersen's allegations as "a wash," the court did not clearly articulate that the allegations were not proved. With

---

[1] The written parenting plan found that neither parent had a problem with domestic violence. CP at 563. On appeal, both parties proceeded based on the trial court's oral decision.

respect to the allegations by Tilson and Hogan's child that resulted in the imposition of a protection order, the court indicated that it was not the judge who imposed the order and did not know what occurred. Finally, the court noted Hogan's testimony about incidents of domestic violence while she was with Tilson, and commented that their relationship ended in 2016 when Tilson was convicted of fourth degree assault domestic violence. RP at 333-35.

Despite finding a history of domestic violence, the court found that limitations should not be imposed because the exception provided by RCW 26.09.191(2)(n) applied in this case. In line with this statutory provision, the court expressly concluded that contact between Tilson and C.A. would not cause physical, sexual, or emotional abuse or harm to C.A. and that the probability that Tilson's harmful abuse of contact would recur was so remote that it was not in C.A.'s best interests to implement a domestic violence limitation.

Regarding Andersen's request for limitations based on Tilson's alcohol abuse, the trial court found that Tilson "has a long-term problem with drugs, alcohol, or other substances that gets in the way of his/her ability to parent." Clerk's Papers (CP) at 564. Based on this finding, the trial court entered a three-phase parenting plan that placed limits on Tilson in the first two phases to ensure that he addressed his alcohol issues. As part of phase one, the trial court ordered that Tilson undergo a substance abuse evaluation that would include information received from "all sources, including [ ] Andersen," and

follow any recommended treatment. Rep. of Proc. (RP) at 342. Tilson was required to

provide a copy of the evaluation and treatment plan, but additional language requiring

Tilson to provide compliance reports to Andersen's attorney was crossed out by the court.

Andersen appeals.

ANALYSIS

While Andersen identifies seven issues on appeal, we consolidate these into four

issues: (1) whether the trial court erred in failing to place limitations on Tilson under

former RCW 26.09.191(1) (2020) and (2)(a) based on the court's finding of domestic

violence, (2) whether the trial court's residential schedule violated RCW 26.09.187(3)(b)

and was an abuse of its discretion based on the court's finding that Tilson suffers from

long-term alcohol abuse, (3) whether the trial court failed to enter findings on Tilson's

mental health issues and abusive use of conflict, and (4) whether either party should be

awarded attorney fees on appeal.

Following a bench trial, we review the trial court's findings of fact and

conclusions of law. Unchallenged findings constitute verities on appeal. *In re Estate of

Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Challenged findings are verities if they are

supported by substantial evidence. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392

P.3d 1041 (2017). "Substantial evidence" requires us to determine if the evidence is

"sufficient to persuade a rational, fair-minded person of the truth of the finding." *Jones*,

152 Wn.2d at 8. "We do not review the trial court's credibility determinations or weigh

conflicting evidence 'even though we may disagree with the trial court in either regard.'" *Black*, 188 Wn.2d at 127 (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 740, 513 P.2d 831 (1973)). We review conclusions of law de novo and consider whether they are supported by the trial court's findings. *Littlefair v. Schulze*, 169 Wn. App. 659, 664, 278 P.3d 218 (2012).

This court reviews a trial court's entry of a parenting plan for an abuse of discretion. *In re Parentage of C.A.S.*, 25 Wn. App. 2d 21, 25-26, 522 P.3d 75 (2022). An abuse of discretion occurs where a decision is manifestly unreasonable or based on untenable grounds or reasons. *Id*. at 26. A manifestly unreasonable decision is one which is outside the range of acceptable choices in light of the facts and relevant legal standard. *Id*.

A.      LIMITATIONS BASED ON A FINDING OF DOMESTIC VIOLENCE

Andersen argues that the trial court abused its discretion in declining to impose limitations in the parenting plan after finding that Tilson had a history of domestic violence. The trial court concluded that despite the finding of domestic violence, Tilson's residential time and decision making should not be limited because the exception provided in RCW 26.09.191(2)(n) applied. For different reasons we conclude that the trial court abused its discretion with respect to limitations on Tilson's residential time and joint decision making.

1.      *Limitations on Residential Time*

8

Generally, a parent's residential time with their child shall be limited if the court concludes that the parent has a history of domestic violence. Former RCW 26.09.191(2)(a)(iii) (2021).[2] However, even when domestic violence is found, a trial court retains discretion, and need not apply the limitations to a parent's residential time, if either one of two exceptions apply: (1) the court specifically finds that the child will not be harmed by contact with the offending parent and that the probability if reoccurring violence is so remote that it would not be in the best interest of the child to apply the limitations, or (2) the conduct did not have an impact on the child. Former RCW 26.09.191(2)(n).[3]

Here, the court made findings under the first exception:

> I do so expressly find that even though there is a history of domestic violence under 2(n) I expressly find based on the evidence, that contact between Mr. Tilson and [C.A.] will not cause physical, sexual, or emotional abuse or harm to [C.A.]. It is remote. It is so remote that it

---

[2] Former RCW 26.09.191(2)(a) (2021): "The parent's residential time with the child shall be limited if it is found that the parent has engaged in any of the following conduct: . . . (iii) a history of acts of domestic violence as defined in RCW 26.50.010(3) or an assault or sexual assault that causes grievous bodily harm or the fear of such harm or that results in a pregnancy."

[3] Former RCW 26.09.191(2)(n): "If the court expressly finds based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the child's best interests to apply the limitations of (a), (b), and (m)(i) and (iv) of this subsection, or if the court expressly finds that the parent's conduct did not have an impact on the child, then the court need not apply the limitations of (a), (b), and (m)(i) and (iv) of this subsection."

> would not be in the child's best interest to apply the limitations. That's
> my finding there.

RP at 341.

This finding is too conclusory to support the legal conclusion that the exception applies. "While the degree of particularity required in findings of fact depends on the circumstances of the particular case, they should at least be sufficient to indicate the factual bases for the ultimate conclusions." *City of Walla Walla v. $401,333.44*, 164 Wn. App. 236, 254, 262 P.3d 1239 (2011). Findings should be sufficient to identify the conflicting contentions and resolve the material issues of fact. *Id*.

Here, the parties disputed the extent of Tilson's history of domestic violence. Yet the trial court did not specify which allegations of domestic violence it found credible. The finding of remoteness could be supported by substantial evidence depending on the allegations of domestic violence the court finds credible. But the conclusory finding that the domestic violence was remote, without more specific findings, is insufficient to provide a factual basis for the conclusion that the exception in RCW 26.09.191(2)(n) applies.[4] Because the court's findings are insufficient to support its conclusion that the exception in RCW 26.09.191(2)(n) should apply, , the trial court's decision was an abuse of discretion.

    2.      Limitations on Joint Decision-Making

---

[4] To be clear, we are not finding that the evidence does not support the findings.

Andersen also challenges the trial court's decision to require joint decision making after finding that Tilson had a history of domestic violence. We agree with Andersen. Once the court found that Tilson had a history of domestic violence, the limitations of RCW 26.09.191(1) applied and the court abused its discretion by requiring joint decision making. Unlike the discretion to limit residential time upon a finding of domestic violence under RCW 26.09.191(2)(a)(iii) and (2)(n), the limitations on decision-making under RCW 26.09.191(1) are mandatory and without exception.

Former RCW 26.09.191(1) provides in part:

> The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in any of the following conduct: . . . (c) a history of acts of domestic violence as defined in RCW 26.50.010(3) or an assault or sexual assault that causes grievous bodily harm or the fear of such harm or that results in a pregnancy.

Division One of this court recently confirmed that this statutory provision is non-discretionary. *C.A.S.*, 25 Wn. App. 2d at 27-28. "On its face the statute affords no discretion, it prohibits trial courts from requiring mutual decision-making or nonjudicial dispute resolution where there is a history of domestic violence." *Id*. The limitation applies even when the acts of domestic violence were committed against a third person or child. *Id*. at 28.

Nor does the exception for limitations on residential time provided in former RCW 26.09.191(2)(n) apply to the limitations on joint decision making required by former

11

RCW 26.09.191(1). Subsection (2)(n) provides that if the court makes the express findings set forth in the subsection "then the court need not apply the limitations of (a), (b), and (m)(i) and (iv) of this subsection." A close reading of this sentence makes it clear that the exception applies to certain limitations under subsection (2), not subsection (1). *See C.A.S.*, 25 Wn. App. 2d at 28 (court's discretion provided in subsection (2)(n) does not apply to limitations required by subsection (1)).

Here, the trial court held that it could require joint decision making despite its finding of domestic violence because the exception provided in RCW 26.09.191(2)(n) applied. This conclusion is untenable, and thus, the trial court's order requiring joint decision making was an abuse of discretion.

B.     LIMITATIONS BASED ON A FINDING OF ALCOHOL ABUSE

Next, Andersen contends that after finding Tilson had a long-term problem with alcohol that interferes with his ability to parent, the trial court abused its discretion by entering a parenting plan that increased Tilson's residential time as his treatment progressed. She argues that the limitations and residential schedule are unreasonable and the final shared residential schedule is prohibited by RCW 26.09.187(3)(b).

The trial court found that Tilson had a long-term problem with alcohol abuse that impacted his ability to parent and then provided a phased-in residential schedule based on Tilson's progress in treatment. In its oral ruling, the court indicated that Tilson's initial

alcohol evaluation should include information from all sources, including Andersen. After indicating that Tilson was to follow any treatment recommendations, the court also indicated that Tilson was to provide copies of "everything" to Andersen's attorney. RP at 342. Andersen points out that the written parenting plan does not include language that Andersen is to provide information to the evaluator and the court crossed out language that Tilson was to provide compliance reports to Andersen. Andersen contends that the court's written plan is unreasonable because there is no way for Andersen to verify the accuracy of the evaluation or confirm compliance with treatment. For several reasons, we disagree.

First, it is not clear that the court's written parenting plan is inconsistent with its oral decision. Even if it is, the record does not indicate that Andersen objected to the written parenting plan so as to provide the trial court with an opportunity to address or correct the perceived differences. *See* RAP 2.5(a) (providing that issues generally may not be raised for the first time on appeal).

As we noted above, the trial court has discretion in crafting an appropriate parenting plan. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). Here, the court's parenting plan requires Tilson to show proof of complying with specific stages of his treatment before he is entitled to more residential time with C.A. under the next phase in the parenting plan. This phased-in approach is not manifestly unreasonable.

13

Nor do we agree with Andersen that the trial court's final residential schedule, providing for shared residential time, violated RCW 26.09.187(3)(b). This statute provides that "[w]here the limitations of RCW 26.09.191 *are not dispositive*, the court may order that a child frequently alternate his or her residence between the households of the parents for brief and substantially equal intervals of time if such provision is in the best interests of the child." RCW 26.09.187(3)(b) (emphasis added).

Andersen's assignment of error raises an issue of statutory construction. This court reviews questions of statutory construction de novo. *C.A.S.*, 25 Wn. App. 2d at 26. The purpose of statutory interpretation is to ascertain the legislative intent and interpret the statute to carry out the intent. *Id*. This court should begin its interpretation by examining a statute's plain language. *Id*. "'If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction.'" *Id*. (quoting *Homestreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009)).

RCW 26.09.191 provides for mandatory limitations and discretionary limitations. Under RCW 26.09.191(3)(c), a trial court "*may* preclude or limit any provisions of the parenting plan" if it finds [a] long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions." RCW 26.09.191(3)(c) (emphasis added). "The word 'may' in a statute denotes discretion and is distinct from the word 'shall,' which indicates a mandatory action." *In re Marriage of Kim*, 179 Wn. App. 232, 250-51, 317 P.3d 555 (2014). Thus, under this provision the trial court had discretion to impose limitations upon finding long-term impairment from alcohol abuse, but the finding of impairment did not require limitations. In other words, the finding of impairment was not dispositive on the residential schedule. Since the limitations imposed by the trial court under RCW 26.09.191 were not dispositive the court's shared residential schedule did not violate RCW 26.09.187(3)(b).

C.    FINDINGS ON MENTAL HEALTH AND ABUSIVE USE OF CONFLICT

Andersen contends that the trial court erred in failing to enter findings or limitations on Tilson's mental health issues and abusive use of conflict. The record does not reflect that Andersen requested limitations based on mental health issues. Nor did the record reflect that Andersen objected to the lack of findings based on this factor. We decline to address this issue for the first time on appeal. RAP 2.5(a).

The trial court declined to find that Tilson exhibited abusive use of conflict, commenting that if it were to find this factor existed, it would find it against both parties.

Andersen argues that the court did not explain how she employed abusive use of conflict and argues that there is no evidence that she suffers from mental health issues. The trial court's finding was based on its evaluation of the evidence and credibility of the witnesses; two areas of the law that we do not re-examine on appeal. "An essential function of the fact finder is to discount theories which it determines unreasonable because the finder of fact is the sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of witnesses." *State v. Bencivenga*, 137 Wn.2d 703, 709, 974 P.2d 832 (1999).

Even if the trial court had found an emotional impairment or abusive use of conflict, the statute does not require the court to impose limits on Tilson's residential time. Andersen fails to cite any provision that supports her contention that the trial court was prohibited from entering a parenting plan with a shared residential schedule based on Tilson's alcohol abuse, abusive use of conflict, or mental health struggles. The trial court did not abuse its discretion in ordering a shared residential schedule.

D.    ATTORNEY FEES ON APPEAL

Tilson and Andersen both request their attorney fees on appeal. Tilson requests fees under RAP 18.9(a) and claims that Andersen's appeal was frivolous. Given our holding, we reject Tilson's argument.

Andersen requests fees based on need and ability to pay under RAP 18.1 and RCW 26.09.140. The statute provides this court with discretion to award attorney fees after considering each parties' financial resources. Although Andersen filed a timely financial declaration, it is difficult to determine if she has a financial need for attorney fees. In view of our decision to remand, we decline to consider attorney fees and costs with leave to the trial court to consider them on remand. RAP 14.4(c).

## CONCLUSION

We hold that the trial court's findings of fact pertaining to Tilson's history of domestic violence is insufficient to provide effective appellate review of the court's conclusion that it maintained discretion under RCW 26.09.191(2)(n) to impose limitations on Tilson's residential time with C.A. We remand with instructions for the court to supplement its findings on this issue and revise its conclusions accordingly.

We further conclude that the trial court abused its discretion by requiring joint decision-making despite its finding that Tilson had a history of domestic violence. The limitations provided in former RCW 26.09.191(1) are mandatory and not subject to the exception provided in RCW 26.09.191(2)(n). We remand with instructions for the court to modify the parenting plan and remove the requirement for joint decision making.

No. 39062-4-III
*Andersen v. Tilson*

Otherwise, we find that the trial court's phased-in residential schedule, after finding that Tilson suffered from a long term impairment from alcohol, was not an abuse of discretion and affirm this portion of the trial court's parenting plan.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.